IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

TEDDY LEE                                                                                           PLAINTIFF

V.                                                                          CIVIL ACTION NO.: 4:20-CV-14

PARKER WRECKER SERVICE, LLC, et al.                                                    DEFENDANTS

ORDER AND MEMORANDUM OPINION

Teddy Lee filed this action on December 6, 2019, in the Circuit Court of Leflore County, Mississippi, asserting Mississippi state law claims against Parker Wrecker Service, LLC; Riverside Insurance Agency, Inc.; and American Fire and Casualty Company. American Fire removed the case to this Court on January 24, 2020, and premises federal jurisdiction on the basis of diversity of citizenship. Now before the Court is Lee's Motion [13] to Remand. The issues have been fully briefed and are ripe for review.

*Background and Procedural History*

The Plaintiff, a citizen of Madison County, Mississippi, owned a 2018 Kenworth truck which he used to spray road surfacing materials for paving asphalt. On July 3, 2019, the truck got stuck after sliding into a ditch with soft earth. The Plaintiff called Parker Wrecker Service[1] to assist with removing the truck from the ditch. The Plaintiff asserts that he specifically asked Parker to dispatch a larger wrecker in order to use a boom truck to remove the Plaintiff's truck. However, Parker dispatched two smaller wreckers that were unable to remove the truck. After the Plaintiff spoke with Parker's owner and operator, Jeremy Black, Parker dispatched the large boom to the scene while the other drivers and operators of the two smaller wreckers remained on the scene.

---

[1] Parker Wrecker Service is a limited liability company whose sole member, Jeremy Black, is a citizen of Mississippi.

The driver and operator of the boom truck placed a strap around the tank of the truck and attempted to remove the truck from the ditch. In doing so, the truck's chemical tank was severely damaged and required an environmental cleanup, which Parker attempted to accomplish. The Plaintiff then directed Parker to take the truck to a repair shop as opposed to Parker's lot. Black informed the Plaintiff that he would move the truck to the repair shop on July 5, 2019 – two days later; however, the truck remains at Parker's lot, and Parker has charged the Plaintiff with storage and removal fees as well as fees for the environmental cleanup. Parker claims that it is awaiting payment for those fees before it will release the truck to the Plaintiff.

Defendant Riverside Insurance Agency[2] served as the Plaintiff's insurance broker and procured the coverage for all the Plaintiff's vehicles and his road paving equipment. Riverside ultimately obtained coverage for the Plaintiff's vehicles and road paving equipment through Defendant American Fire and Casualty Company.[3] Riverside assured the Plaintiff that all of his equipment had the coverage it needed for its use; however, American Fire did not pay the Plaintiff for the alleged environmental cleanup costs associated with the incident, claiming the Plaintiff did not have environmental coverage on the truck forming the basis of this action. The Plaintiff states that this truck was the Plaintiff's only truck that carried chemicals and thus was his only truck that would have required environmental coverage. However, according to the Plaintiff, every one of his vehicles, except the subject truck, had environmental coverage.

The Plaintiff brought this suit in state court, alleging claims against Parker for negligence, gross negligence, replevin, negligent misrepresentation, and intentional misrepresentation; claims

---

[2] The Plaintiff asserts that Riverside Insurance Agency is a limited liability company; however, Riverside Insurance Agency argues that it is a Mississippi corporation. Therefore, it is unnecessary to provide its members and their states of citizenship. It is noted, however, that Riverside's principal place of business is not alleged.

[3] American Fire and Casualty Company is a New Hampshire Corporation with its principal place of business in Boston, Massachusetts.

2

against Riverside for negligence and gross negligence; and claims against American Fire for breach of contract, bad faith, and negligence and/or gross negligence. American Fire removed the action to this Court, asserting that the claims against it, a completely diverse defendant, were fraudulently misjoined with the Plaintiff's claims against the other Defendants, who are non-diverse from the Plaintiff. The Plaintiff filed the present Motion [13] to Remand shortly thereafter.

*Fraudulent Misjoinder Standard*

"[M]isjoinder of plaintiffs should not be allowed to defeat diversity jurisdiction." *In re Benjamin Moore & Co.*, 309 F.3d 296, 298 (5th Cir. 2002) (citing *Tapscott v. Mississippi Dealer Service Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996), abrogated on other grounds, *Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000)). The Eleventh Circuit first recognized fraudulent misjoinder as a basis for diversity jurisdiction in *Tapscott*. *Boddie v. Walker*, 312 F. Supp. 3d 541, 542 (N.D. Miss. 2018) (citing *Tapscott*, 77 F.3d 1353). There, the Eleventh Circuit held:

> Misjoinder may be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possibility of a cause of action. A defendant's "right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy."

*Tapscott*, 77 F.3d at 1360 (citing *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97, 42 S. Ct. 35, 37, 66 L. Ed. 144 (1921)). In its opinion, the Eleventh Circuit emphasized that not all misjoinder is fraudulent misjoinder. *Boddie*, 312 F. Supp. 3d at 543 (citing *Tapscott*, 77 F.3d at 1360). Rather, in order for misjoinder to be fraudulent, it must be so improper as to be egregious. *Id.* (citing *Tapscott*, 77 F.3d at 1360).

The Fifth Circuit has not adopted the fraudulent misjoinder doctrine, but it has favorably referenced the doctrine. *Id.* For example, in *In re Benjamin Moore & Co.*, the Fifth Circuit reasoned that in a case with "seventeen plaintiffs…who have nothing in common with each other…it might

3

be concluded that misjoinder of plaintiffs should not be allowed to defeat diversity jurisdiction." *Id.* (quoting *In re Benjamin Moore & Co.*, 309 F.3d at 298). "For the most part, however, the Fifth Circuit's jurisprudence regarding fraudulent misjoinder is very sparse, and it has largely been left to Mississippi district courts to define the scope of the doctrine." *Id.*

This Court, as well as the District Court for the Southern District of Mississippi, has previously applied the "egregious" misjoinder standard. *See Sweeney v. Sherwin Williams Co.*, 304 F. Supp. 2d 868, 872 (S.D. Miss. 2004) ("To constitute fraudulent misjoinder, the misjoinder must represent totally unsupported, or egregious misjoinder."); *Walton v. Tower Loan of Mississippi*, 338 F. Supp. 2d 691, 695 (N.D. Miss. 2004) ("[F]or *Tapscott* to be applicable, this court would be required to find a level of misjoinder that was not only improper, but grossly improper."); *Cooper v. AIG Claim Services, Inc.*, 2009 WL 279101 at *2 (N.D. Miss. Feb. 5, 2009) ("For this court to accept jurisdiction despite the misjoinder of a non-diverse defendant, the misjoinder must be egregious or grossly improper.") In *Boddie*, the Court gave an example of what would constitute "egregious" misjoinder:

> [I]f a Mississippi citizen, wishing to avoid federal court, joins his products liability claim against a car manufacturer with a totally unrelated property dispute against his neighbor, then that would clearly seem to be the sort of "egregious" misjoinder that would justify application of the doctrine. In such a hypothetical there would be no common questions of law or fact between the two claims, and the circumstances of the case would certainly lead one to suspect that the plaintiff was simply trying to defeat federal jurisdiction.

*Boddie*, 312 F. Supp. 3d at 544. "The burden of persuasion on those who claim fraudulent joinder is a heavy one." *Travis v. Irby*, 326 F.3d 644, 649 (5th Cir. 2003) (citing *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. 1981)). "For fraudulent joinder, the district court…must also take into account all unchallenged factual allegations, including those alleged in the complaint, in the

light most favorable to the plaintiff." *Id*. "[I]t is insufficient that there be a mere theoretical possibility of recovery; to the contrary, there must at least be arguably a reasonable basis for predicting that state law would allow recovery in order to preclude a finding of fraudulent joinder." *Walton v. Tower Loan of Mississippi*, 338 F. Supp. 2d 691, 693 (N.D. Miss. 2004) (quoting *Travis*, 326 F.3d at 648 (citing *Badon v. RJR Nabisco Inc.*, 224 F.3d 382, 386 (5th Cir. 2000)) (internal quotations omitted)).

"The district court must also take into account the 'status of discovery' and consider what opportunity the plaintiff has had to develop its claims against the non-diverse defendant." *McKee v. Kansas City Southern Railway Co.*, 358 F.3d 329, 334 (5th Cir. 2004) (citing *Travis*, 326 F.3d at 649)). "When considering whether a non-diverse defendant has been fraudulently joined to defeat diversity of citizenship jurisdiction, courts should 'pierce the pleadings' and consider 'summary judgment-type evidence such as affidavits and deposition testimony.'" *Sweeney*, 304 F. Supp. 2d at 871 (quoting *Cavallini v. State Farm Mutual Auto Insurance Co.*, 44 F.3d 256, 263 (5th Cir. 1995)). "Under this standard, plaintiffs 'may not rest upon the mere allegations or denials of [their] pleadings.'" *Id*. (quoting *Beck v. Texas State Board of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000)).

*Analysis*

The Plaintiff argues that this case should be remanded because he did not fraudulently misjoin any of the Defendants. He argues that he has alleged claims against two non-diverse Defendants that arise from the same set of operative facts as his claims against American Fire.

American Fire cites the Mississippi Supreme Court's decision in *Hegwood v. Williamson* and argues that, since the Plaintiff's claims against the other Defendants arise out of separate occurrences and have different questions of law and fact, the case should be severed and the claims

against American Fire kept in this Court. 949 So.2d 728 (Miss. 2007). For example, American Fire argues that the Plaintiff's claims against Parker are tort claims and, as such, raise different questions of law than do the Plaintiff's breach of contract claims against American Fire. Additionally, American Fire argues that the Plaintiff's claims against Parker arise out of Parker's removal of the truck from the ditch whereas the Plaintiff's claims against American Fire arise out of the insurance investigation after the truck was removed from the ditch. Likewise, American Fire argues that the Plaintiff's claims against Riverside are also tort claims and therefore raise different questions of law than the Plaintiff's breach of contract claims against American Fire, and the Plaintiff's claims against Riverside raise different questions of fact as they arise out of the insurance selection process prior to the truck getting stuck in the ditch.

The Court in *Boddie* further analyzed the issue of egregious misjoinder. *Boddie*, 312 F. Supp. 3d 541. "Simply stated, if the plaintiff is not legally entitled to recover from the tortfeasor, then neither may he recover UM benefits against his insurer." *Id*. at 545 (internal citation omitted). Although *Boddie*, a UM case, is factually distinguishable, the Court finds its analysis instructive here. This case is similar to a UM case, in that it concerns a plaintiff bringing a claim against his own insurance carrier. *See id*. at 547 ("[The] distinction between liability and UM insurers is understandable, considering that, when a plaintiff sues his UM carrier, he is suing a company with which he had a contract and to which he paid premiums. By contrast, when a plaintiff sues someone else's liability insurer, he is suing a company with which he had no such relationship, and the argument for bringing claims against such an insurer is much more tenuous."). Looking at this case as one similar to UM cases, the Court will consider whether there are common questions of law or fact in the claims the Plaintiff raises. "[T]he simple fact of the matter is that claims against UM carriers and tortfeasors will generally share issues of law and fact." *Id*.

6

In this case, the inescapable truth is that, whether the claims proceeded in federal court alone against American Fire or against all three Defendants in state court, the proof at trial will relate to whether Parker was negligent and the resulting damages. *See Id*. at 547. For example, in a case between the Plaintiff and American Fire alone, the Plaintiff would still be likely to introduce evidence of Parker's alleged liability. Additionally, evidence concerning Riverside's alleged negligence would most certainly seem relevant. Specifically, the Plaintiff argues that Riverside was negligent in its procurement of the Plaintiff's insurance with American Fire because it represented to the Plaintiff that Riverside had procured chemical and pollution riders for the vehicle with the chemical tank while American Fire claims it provided no such coverage. Again, in order to determine whether American Fire is liable for the claims the Plaintiff has brought against it, the finder of fact would first likely need to consider whether Riverside was negligent in its procurement of the insurance coverage.

Taking all of these issues in account, the Court finds that the claims against these three parties are so closely related that they should be tried jointly. This Court shares the public policy concerns the court shared in *Boddie*:

> [The] court wonders what public policy considerations are served by having parallel actions in federal and state court, merely to decide the exact same negligence issues. Indeed, given that federal courts in this state are well known to litigate cases with greater speed than state courts, it seems likely to this court that the results of the remanded state court action would, in most cases, be mooted by the federal court reaching a verdict first. This court presumes that the federal court verdict would have preclusive effect in state court, but, even if it did not, the fact that the plaintiff is unable to recover from his UM carrier would likely moot the issue of the tortfeasor's liability.

*Id*. at 548. Although the claims against the Defendants are not identical, this Court believes that they should proceed in a single action. Therefore, because complete diversity is not present, this Court lacks subject matter jurisdiction and the case must be remanded.

*Conclusion*

For the reasons set forth above, the Plaintiff's Motion [13] to Remand is GRANTED. The Clerk of Court is directed to take all steps necessary to REMAND this case to the Circuit Court of Leflore County, Mississippi.

SO ORDERED, this the 14th day of September, 2020.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE